UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEDSOURCE, LLC,

    Plaintiff,

Case No. 12-11946

v.

Hon. John Corbett O'Meara

DEROYAL INDUSTRIES, INC., *et al.,*

    Defendants.

_____/

# OPINION AND ORDER GRANTING IN PART
# AND DENYING IN PART MOTIONS TO DISMISS

Before the court are three motions to dismiss filed by DeRoyal Industries, Inc., Ken Jones, and the Physician Defendants. The court heard oral argument on November 15, 2012, and took the matter under advisement.

## BACKGROUND FACTS

Plaintiff MedSource LLC has sued DeRoyal Industries, Inc., Kevin Katschanow, Ortho Workz, Inc., Ortho Workz South, LLC, Mendelson Kornblum Orthopedics, P.C., Dr. Stephen Mendelson, Dr. David Mendelson, Dr. Jeffrey Mendelson, Dr. Martin Kornblum, Dr. Andrew Monk, and Ken Jones. DeRoyal is suing Kevin Katschanow and Timothy Kalbfleisch; and Katschanow, Ortho Workz, Inc., and Ortho Workz South are suing Kalbfleisch. DeRoyal, Katschanow, and Ortho Workz, Inc., have also filed a counterclaims against MedSource.

The motions before the court focus on MedSource's complaint: (1) DeRoyal Industries' motion to dismiss; (2) Ken Jones's motion to dismiss; and (3) the motion to dismiss filed by the "Physician Defendants" (Mendelson Kornblum Orthopedics, P.C. and the five individual physicians). Katschanow, Ortho Workz, Inc., and Ortho Workz South filed a joinder in the

motions to dismiss; however, they answered the complaint and therefore cannot seek dismissal pursuant to Rule 12(b)(6). See Fed. R. Civ. P. 12(b).

In its complaint, MedSource alleges a scheme by Defendants to use MedSource's trade secrets, resources, and employees to unfairly compete against it and cut it out of the Michigan market. Medsource is a supplier of durable medical equipment ("DME") that also offers third-party billing services to physician offices. DeRoyal is a manufacturer of DME products. Kevin Katschanow was a sales representative for MedSource and DeRoyal. Katschanow also owns Ortho Works, Inc. ("OWI"). MedSource alleges that from 2007 to 2010, MedSource, DeRoyal, and Katschanow worked together in the Michigan market. OWI, through Katschanow, would maintain business relationships with physicians; the physicians would order DME product through MedSource; MedSource would purchase DME product from DeRoyal and others; and then MedSource would bill the third-party payor, such as Medicare. MedSource alleges that neither DeRoyal nor Katschanow/OWI had experience in third-party billing, and therefore relied on MedSource for this service.

MedSource alleges that, sometime in 2010, Katschanow and DeRoyal joined together with several Michigan physicians (the Physician Defendants) and Ken Jones (a DeRoyal vice president) in a scheme to push MedSource out of the relationship. Katschanow, Jones, and the Physician Defendants formed Ortho Workz South LLC ("OWS"). MedSource alleges that, in order to push MedSource out, OWS or OWI would need to engage in third-party billing and would need approval to bill Medicare. Obtaining such approval requires accreditation from an authorized accreditor, such as The Joint Commission. MedSource alleges that obtaining accreditation from The Joint Commission is an extensive process that involves significant capital

investment and can take several years, often requiring the services of an expert consultant.

MedSource claims that Defendants planned to obtain accreditation for OWI and use OWI's billing number for OWS, relying on their similar names to confuse the two.  MedSource alleges that OWI did not have sufficient resources to obtain accreditation, so Defendants chose to defraud MedSource by using MedSource's employees, trade secrets, and resources to obtain accreditation for OWI.  MedSource contends that Katschanow directed his friend and MedSource's manager in its Michigan office, Timothy Kalbfleisch, as well as at least eight other MedSource employees, to work on matters for the benefit of OWI and OWS.  MedSource contends that its employees were used to solicit customers and other employees away from MedSource and to prepare OWI's accreditation application.  According to MedSource, when The Joint Commission conducted an on-site visit in February 2011, OWI represented that certain MedSource employees were its own.

In addition, MedSource claims that OWI presented MedSource's written policies, procedures, and patient files as its own to The Joint Commission.  According to MedSource, DeRoyal's President and General Counsel knew that OWI was using MedSource's resources to obtain accreditation.  MedSource asserts that, because of these misrepresentations, OWI received accreditation and third-party billing privileges with Medicare in April 2011.  MedSource contends that OWI would not have been able to do so if it had not improperly used MedSource's resources.  MedSource alleges that DeRoyal intended to use OWI/OWS instead of MedSource to offer third-party billing services to its customers.

MedSource contends that when it discovered the scheme, it immediately closed its Michigan office in May 2011.  MedSource filed its complaint on April 30, 2012, and its

amended complaint in September 5, 2012. MedSource alleges the following causes of action: Count I, violation of RICO, 18 U.S.C. § 1962(c); Count II, RICO, 18 U.S.C. § 1962(d) (conspiracy); Count III, tortious interference with contract; Count IV, conspiracy to commit tortious interference with contract; Count V, tortious interference with business expectancy; Count VI, conspiracy to commit tortious interference with business expectancy; Count VII, breach of fiduciary duty; Count VIII, conversion; Count IX, conspiracy to convert; Count X, unjust enrichment; Count XI, Michigan Trade Secrets Act; Count XII, unfair competition; and Count XIII, conspiracy to unfairly compete. Defendants seek dismissal of all of MedSource's claims.

## LAW AND ANALYSIS

**I.      Standard of Review**

Defendants seek dismissal pursuant to Rule 12(b)(6). To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. See also Hensley Manuf. v. Propride, Inc., 579 F.3d 603, 609 (6th Cir. 2009). "A pleading that offers 'labels and conclusions' or "a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 677-78 (citing Bell Atlantic Inc. v. Twombley, 550 U.S. 544, 555, 557 (2007)).

**II.     Physician Defendants' Motion**

MedSource's amended complaint is devoid of concrete factual allegations against the Physician Defendants, although it states the following claims against them: Count II, RICO conspiracy; Count V, tortious interference with business expectancy; Count VI, conspiracy to commit tortious interference with business expectancy; Count IX, conspiracy to convert; Count X, unjust enrichment; Count XI, Michigan Trade Secrets Act; and Count XIII, conspiracy to unfairly compete. MedSource fails to allege that the individual Physician Defendants participated in the alleged scheme, other than to contend that the Physician Defendants stood to benefit from their ownership of OWS, and that they agreed to exclusively use OWS/OWI and DeRoyal. Given the lack of factual allegations suggesting liability on the part of the individual Physician Defendants, Plaintiff's Amended Complaint is insufficient under Iqbal and Twombley with respect to each of MedSource's causes of action.

MedSource argues that the Physician Defendants are liable for the wrongdoing of Kalbfleisch, who it contends is their "agent." MedSource does not allege facts regarding this alleged agency relationship in its Amended Complaint; nor does MedSource allege in the Amended Complaint that Kalbfleisch was acting as the agent of the individual physicians in conducting the alleged scheme.

MedSource also suggests that the Physician Defendants are liable as "managing members" of the OWS LLC, an allegation that was also not pleaded in the Amended Complaint. OWS was organized as a LLC in Florida. Under Florida law, in general, members are not liable for torts of the LLC. See Fla. Stat. 608.4227 ("[T]he members, managers, and managing members of a limited liability company are not liable, solely by reason of being a member or serving as a manager or managing member, under a judgment, decree, or order of a court, or in

any other manner, for a debt, obligation, or liability of the limited liability company."). Under limited circumstances, a manager or managing member of a LLC could be liable for the LLC's torts by engaging in malfeasance. MedSource has alleged that Katschanow is OWS's managing member. Compl. at ¶ 16. MedSource has not pleaded facts indicating that the individual Physician Defendants were managers or managing members of OWS who engaged in malfeasance, such that liability could plausibly attach.

MedSource has not pleaded facts that would allow the court to reasonably infer that the Physician Defendants are liable for a conspiracy to violate RICO, tortious interference with business expectancy, conspiracy to commit tortious interference, conspiracy to convert, unjust enrichment, violations of the Michigan Uniform Trade Secrets Act, or conspiracy to unfairly compete. Accordingly, the court will dismiss all of MedSource's claims against the Physician Defendants.

### III. DeRoyal's Motion

DeRoyal is a defendant in each of the counts alleged in the Amended Complaint, except Count VII, which alleges a breach of fiduciary duty against Katschanow, only. DeRoyal seeks dismissal of all of the counts against it.

#### A. RICO

MedSource alleges that Defendants have violated 18 U.S.C. § 1962(c) of RICO, which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a patter of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a RICO claim under this section, MedSource must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006) (quoting Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).

DeRoyal seeks dismissal of the RICO claim on several grounds; however, because MedSource has clearly failed to plead a pattern of racketeering activity, the court need only address that element. See id. A "pattern of racketeering activity" consists of at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail and wire fraud statutes. 18 U.S.C. § 1961(1).

Here, MedSource alleges predicate acts involving wire and mail fraud, specifically that the OWI and OWS Medicare surety applications contained false information and were transmitted by fax. See Compl. at ¶¶ 58, 65-72, 75-76, 86-98, 101-103, 104. The Supreme Court has explained that "the term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is this factor of *continuity plus relationship* which combines to produce a pattern." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). "Continuity and relationship constitute two analytically distinct prongs of the pattern requirement." Moon, 465 F.3d at 724 (citation omitted).

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., 492 U.S. at 241. The continuity requirement "ensures that RICO is limited to addressing Congress's primary concern in enacting the statute, i.e. long-term criminal

conduct." Vemco, Inc. v. Camardella, 23 F.3d 129, 133-34 (6th Cir. 1994). A plaintiff may satisfy the continuity requirement by pleading either closed- or open-ended racketeering activity. A closed period of continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." H.J., 492 U.S. at 242. "Although there are no rigid rules regarding what amounts to 'a substantial period of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient." Moon, 465 F.3d at 724-25 (citing H.J., 492 U.S. at 242). An open-ended period of continuity refers to past conduct "which by its nature projects into the future with a threat of repetition." Vemco, 23 F.3d at 134 (citing H.J., 492 U.S. at 241-42). Open-ended continuity may be shown through pleading "a distinct threat of long-term racketeering activity," or by showing "that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Moon, 465 F.3d at 726-27 (citation omitted). The Supreme Court stated that a hoodlum who extorts money from shop owners and threatens to return each month to collect "protection" money is an example of racketeering activity with a threat of continuity. See H.J., 492 U.S. at 242.

 Here, MedSource contends that it has sufficiently pleaded open-ended continuity. However, what MedSource alleges is a single fraudulent scheme with a single victim and objective over a relatively short period of time: to cut MedSource out of the Michigan market by fraudulently obtaining Medicare billing privileges. Under similar circumstances, the Sixth Circuit has declined to find that continuity was properly pleaded. See Vemco, 23 F.3d at 135 (allegations "involving a single victim and a single scheme for a single purpose over seventeen months [do not] constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO"); Moon, 465 F.3d at 725 (no continuity where "[a]ll of the predicate acts . . . were

keyed to Defendants' single objective of depriving Moon of his benefits. . . and there are no facts suggesting that the scheme would continue beyond the Defendants accomplishing their goal of terminating Moon's benefits"); Thompson v. Paasche, 950 F.2d 306, 311 (6th Cir. 1991) (fraudulent scheme to sell nineteen lots "an inherently short-term affair" that did not satisfy continuity requirement); Gotham Print, Inc. v. American Speedy Printing Ctr. Inc., 863 F. Supp. 447, 460 (E.D. Mich. 1994) ("When the Supreme Court spoke of the threat of repetition, it was referring to the threat of repeated *victimization* . . . not merely the retention of the ill-gotten fruits of previous crimes."). Accordingly, the court will dismiss the RICO § 1962(c) claim against DeRoyal.

The court will also dismiss MedSource's RICO conspiracy claim under § 1962(d). Because MedSource has failed to state a RICO claim under § 1962(c), its conspiracy claim fails as a matter of law. Craighead v. E. F. Hutton & Co., 899 F.2d 485, 495 (6th Cir. 1989).

### B. State Tort Claims

#### 1. Unfair Competition

With respect to its unfair competition claim, MedSource alleges that "Defendants willfully and maliciously passed off MedSource's employees, patient files, and policies and procedures as their own to the general public, The Joint Commission and Medicare, with the intent to confuse such entities." Compl. at ¶ 169. Under Michigan law,

> Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor.

Letica Corp. v. Sweetheart Cup Co., Inc., 790 F. Supp. 702, 706 (E.D. Mich. 1992). Here, MedSource is not alleging that DeRoyal is "passing off" MedSource's products as its own.

Rather, as stated in its brief, MedSource's unfair competition claim is based on the allegation that "the information and resources wrongly taken from MedSource were used by DeRoyal to gain a competitive edge from MedSource." See Pl.'s Resp. at 20. In its reply brief, DeRoyal contends that an unfair competition claim based upon the alleged misappropriation of trade secrets is displaced by the Michigan Uniform Trade Secrets Act ("MUTSA"), which provides:

> (1) Except as provided in subsection (2), this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (2) This act does not affect any of the following:
> (a) Contractual remedies, whether or not based upon misappropriation of a trade secret.
> (b) Other civil remedies that are not based upon misappropriation of a trade secret.
> (c) Criminal remedies, whether or not based upon misappropriation of a trade secret.

M.C.L. § 445.1908. To the extent that MedSource's unfair competition claim is based upon an alleged misappropriation of trade secrets, it is displaced by the MUTSA. See Bliss Clearing Niagra, Inc. v. Midwest Brake Bond Co., 270 F. Supp.2d 943, 946-47 (W.D. Mich. 2003) ("In determining whether a claim is displaced, courts generally examine whether the claim is based solely upon the misappropriation of a trade secret. If so, the claim must be dismissed.") (collecting cases). To the extent MedSource's unfair competition claim is based upon Defendants' alleged use of its employees and resources, however, it may survive, assuming such

allegations state a claim for unfair competition. Because DeRoyal only raised the MUTSA displacement issue in its reply brief, it has not been fully briefed by the parties. Accordingly, the court will deny DeRoyal's motion to dismiss on this issue without prejudice.

### 2. Remaining Tort Claims

DeRoyal also seeks dismissal of MedSource's claims of tortious interference with contract, tortious interference with business expectancy, conversion, unjust enrichment, and misappropriation of trade secrets. These claims have been sufficiently pleaded in the Amended Complaint to survive a Rule 12(b)(6) motion. MedSource alleges that DeRoyal, through Katschanow and Jones, knew of MedSource's non-solicitation agreements with its employees and induced those employees to breach those agreements by using MedSource's resources and confidential information for the benefit of OWI, thus stating a claim for tortious interference with contract. See Health Call of Detroit v. Atrium Home & Health Care Serv., 268 Mich. App. 83, 89-90 (2005) (elements of tortious interference with contract and business expectancy claims). MedSource also alleges that DeRoyal interfered with MedSource's business expectancy with existing clients by using MedSource's employees, trade secrets, and resources to compete with MedSource. See id. MedSource further alleges that DeRoyal, through Katschanow, wrongfully assumed control over MedSource's property, including files, employees, policies and procedures, thus stating a claim for conversion. See Foremost Ins. Co. v. Allstate Ins. Co., 439 Mich. 378, 391 (1992) ("In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.").

MedSource also alleges that DeRoyal unfairly benefitted from the scheme and misappropriated

-11-

MedSource's trade secrets.  See Sweet Air Inv., Inc. v. Kenney, 275 Mich. App. 492, 504 (2007) (unjust enrichment); Ajuba Int'l, LLC v. Saharia Prods., LLC, __ F. Supp.2d __, 2012 WL 1672713 at *15-16 (E.D. Mich. 2012) (elements of a MUTSA claim).

With respect to each of these causes of action, MedSource has alleged plausible claims for relief.  Although DeRoyal contests, for example, whether Katschanow and Jones were acting within the scope of their employment and whether MedSource's confidential information constitutes a trade secret, such arguments are best assessed after further factual development in discovery.  The court will deny DeRoyal's motion to dismiss with respect to these state tort claims.[1]

## IV.     Ken Jones's Motion

Defendant Ken Jones, a DeRoyal vice president, also seeks dismissal of the claims against him: RICO, tortious interference with contract, tortious interference with business expectancy, unjust enrichment, and misappropriation of trade secrets.  The court finds that MedSource has failed to plead RICO claims against Jones for the same reasons stated above – MedSource has failed to plead a pattern of racketeering activity.  The court will dismiss the RICO claims under §§ 1962(c) and (d) against Jones.

The remaining state tort claims have been sufficiently pleaded by MedSource in order to survive a motion to dismiss.  MedSource has pleaded sufficient personal involvement by Jones to allow these claims to proceed to discovery.  The court will deny Jones's motion with respect to MedSource's tortious interference with contract, tortious interference with business expectancy,

---

[1] At the hearing, DeRoyal argued that all of MedSource's tort claims are preempted by the MUTSA.  Because this issue has not been briefed, the court will not consider it at this time.

unjust enrichment, and misappropriation of trade secrets claims.

## ORDER

IT IS HEREBY ORDERED that the Physician Defendants' September 25, 2012 motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that DeRoyal Industries, Inc.'s September 19, 2012 motion to dismiss is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.

IT IS FURTHER ORDERED that Jones's September 19, 2012 motion to dismiss is GRANTED IN PART and DENIED IN PART, consistent with this opinion and order.


s/John Corbett O'Meara
United States District Judge

Date: November 20, 2012


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, November 20, 2012, using the ECF system.


s/William Barkholz
Case Manager